IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EFFEX CAPITAL, LLC and JOHN DITTAMI, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 17-cv-04245 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| NATIONAL FUTURES ASSOCIATION, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Effex Capital, LLC ("Effex") and John Dittami have sued Defendants National Futures Association ("NFA"), James P. O'Hara, and Thomas P. Sexton, alleging that Defendants published false and defamatory statements regarding Plaintiffs and disclosed their trade secrets without authorization. Now before this Court are Plaintiff's motion for a preliminary injunction (Dkt. No. 7) and Defendants' motion to dismiss Plaintiffs' amended complaint (Dkt. No. 58). As discussed below, because Plaintiffs failed to exhaust their administrative remedies prior to filing this lawsuit, the motion to dismiss is granted and the motion for a preliminary injunction is denied as moot.

## BACKGROUND[1]

The NFA is a registered futures association that operates as a self-regulatory organization; it is organized under the authority of the Commodity Exchange Act, 7 U.S.C. § 21 *et seq.*, and overseen by the United States Commodity Futures Trading Commission ("CFTC"). (Am. Compl.

---

[1] For purposes of Defendants' motion to dismiss, the Court accepts the facts alleged in the amended complaint as true and draws all reasonable inferences in Plaintiffs' favor. *See Citadel Sec., LLC v. Chicago Bd. Options Exch., Inc.*, 808 F.3d 694, 698 (7th Cir. 2015) (discussing the standard for motions to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)); *see also Pisciotta v. Old Nat. Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007) (discussing the standard for Rule 12(c) motions).

¶ 3, Dkt. No. 45.) While the NFA is a private organization, it performs regulatory functions to safeguard the integrity of the derivatives markets that the CFTC would otherwise have to undertake. (*See id.* ¶ 22.) At the time of the events giving rise to this case, Defendant Sexton was the President and Chief Executive Officer of the NFA, as well as its general counsel. (*Id.* ¶ 4.) Defendant O'Hara was a member of the NFA's Business Conduct Committee. (*Id.* ¶ 5.) Sexton and O'Hara participated in some of the NFA's activities described below. (*Id.* ¶ 11.)

Effex is a foreign currency trading firm managed and controlled by Dittami. (*Id.* ¶ 23.) Effex provides foreign currency liquidity to institutional counterparts and utilizes confidential and proprietary trading software in its business. (*Id.* ¶¶ 23, 30.) Effex does not engage in activities that the NFA regulates. (*Id.* ¶ 24.) Hence, Plaintiffs are not members of the NFA. (*Id.* ¶ 21.)

This lawsuit arises out of a disciplinary adjudication by the NFA. (*Id.* ¶¶ 38–49.) Plaintiffs were not themselves the subjects of that adjudication—rather, the NFA was investigating Forex Capital Markets, LLC ("FXCM") and its managers, with whom Plaintiffs did business. (*Id.* ¶¶ 38–43, 60, 61.) While the NFA did not contact Plaintiffs or provide them with notice in connection with its investigation, the CFTC, as part of its own investigation into FXCM, issued subpoenas to obtain documents from Plaintiffs, took a lengthy deposition of Dittami, and obtained various documents and deposition testimony from officers and employees of FXCM. (*Id.* ¶¶ 37, 43.) The NFA then obtained access to various documents, deposition testimony, and other materials (including those originally procured by the CFTC) that contained confidential information related to Plaintiffs' trade secrets. (*Id.* ¶¶ 36, 37, 44, 46–49.) In 2017, the NFA and FXCM reached a settlement, under which a penalty was imposed on FXCM. (*Id.* ¶ 50.) The NFA issued a complaint, decision, narrative, and press release ("NFA Publications") regarding its disciplinary adjudication against FXCM. (*Id.* ¶ 51.) According to Plaintiffs, the NFA Publications contained

false and defamatory statements regarding Plaintiffs (and their connection to FXCM) and revealed Plaintiffs' trade secrets. (*Id.* ¶¶ 50, 51, 60, 61.) In particular, among other things, the NFA Publications stated that Plaintiffs engaged in abusive trade execution practices that denied FXCM's retail customers favorable price improvement and benefitted Effex and FXCM financially, that Effex was controlled by FXCM, and that Effex's relationship with FXCM amounted to a "dealing desk model." (*Id.* ¶ 60.) Plaintiffs did not have an opportunity to participate in the NFA investigation and were not given prior notice regarding the NFA Publications. (*Id.* ¶ 52, 63.)

As a result of the NFA Publications, Plaintiffs claim to have sustained damage to their professional reputations, lost business, and were subjected to several lawsuits. (*Id.* ¶¶ 77–83.) Plaintiffs have brought this suit seeking injunctive relief and monetary damages, alleging that Defendants have defamed Plaintiffs, denied Plaintiffs due process of law, interfered with Plaintiffs' business relations and economic advantage, and violated the Illinois Trade Secret Act. (*Id.* ¶¶ 84–150.) Early in the litigation, Plaintiffs filed a motion seeking a preliminary injunction. (Dkt. No. 7.) While briefing regarding the preliminary injunction was on-going, Defendants filed their motion to dismiss Plaintiffs' amended complaint. (Dkt. No. 58.) Briefing on both motions then proceeded simultaneously and the Court held oral argument.

## DISCUSSION

The Court begins its analysis with Defendants' motion to dismiss, which argues that the present case should be dismissed because Plaintiffs failed to exhaust their administrative remedies with the CFTC prior to filing this federal lawsuit.[2] "Generally, a district court is unable to waive a

---

[2] The parties have not briefed whether the exhaustion requirement at issue here is jurisdictional. *See Gray v. United States*, 723 F.3d 795, 798 (7th Cir. 2013) (discussing the difference between exhaustion requirements that are jurisdictional and those that are not). However, the Court has an obligation to consider the issue of jurisdiction on its own initiative. *Id.* And the caselaw suggests that the exhaustion

3

statutorily-mandated exhaustion requirement." *Citadel Sec., LLC v. Chicago Bd. Options Exch., Inc.*, 808 F.3d 694, 700 (7th Cir. 2015). However, exhaustion is not required if it would be futile. *Id.* The futility exception is limited to those situations where it is clearly shown that the administrative procedure would be useless or inadequate to prevent irreparable harm. *Id.* Thus, where a plaintiff has not made such a clear showing, application of the futility exception is unwarranted. *Id.* This is true even if there is no obvious path to the compensation plaintiff seeks. *See id.*

The CFTC has exclusive jurisdiction over certain aspects of the futures trading market. *See* 7 U.S.C. § 2(a)(1)(A). The NFA, as a registered futures association, is subject to comprehensive oversight by the CFTC. *See* 7 U.S.C. § 21; *see also* 17 C.F.R. § 171.1 *et seq*. The CFTC's authority to review registered futures associations' disciplinary actions is set forth in 7 U.S.C. § 21(h), which provides, in relevant parts:

> (1) If any registered futures association takes any final disciplinary action against a member of the association or a person associated with a member, denies admission to any person seeking membership therein, or bars any person from being associated with a member, the association promptly shall give notice thereof to such member or person and file notice thereof with the Commission. The notice shall be in such form and contain such information as the Commission, by rule or regulation, may prescribe as necessary or appropriate to carry out the purposes of this chapter.

---

requirement is a jurisdictional one. *See Citadel Sec., LLC v. Chicago Bd. Options Exch., Inc.*, 808 F.3d 694, 701 (7th Cir. 2015) (considering a similar exhaustion requirement under the Securities Exchange Act of 1934 and affirming dismissal for lack of subject-matter jurisdiction). Thus, it seems that Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be viewed as a motion for lack of jurisdiction under Rule 12(b)(1), with Plaintiffs bearing the burden of establishing that jurisdictional requirements have been met. *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014).

Whether or not the exhaustion requirement is jurisdictional, however, does not alter the outcome. Even if exhaustion is not a jurisdictional issue but simply an affirmative defense in this case, then Defendants' motion may properly be viewed as a motion under Rule 12(c), and the Court still has in front of it all that it needs to rule. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010). There is no dispute that Plaintiffs failed to seek CFTC review before filing suit, and, for the reasons detailed below, the exhaustion requirement applies to Plaintiffs' claims while futility exception does not.

> (2) Any action with respect to which a registered futures association is required by paragraph (1) to file notice ***shall be subject to review by the Commission on its motion, or on application by any person aggrieved by the action***. Such application shall be filed within 30 days after the date such notice is filed with the Commission and received by the aggrieved person, or within such longer period as the Commission may determine.

7 U.S.C. §§ 21(h)(1), (2) (emphasis added). Thus, the statute offers two options to pursue the CFTC's review: on the CFTC's own motion and on "application by any person aggrieved by the action." *Id.*

Someone seeking CFTC review does not have to sit and wait for the CFTC to make a motion. CFTC regulations governing motions provide that "[a]n application for a form of relief not otherwise specifically provided for" can be made by a written motion. 17 C.F.R. § 171.10(a). Thus, it appears that one can move the CFTC to exercise its authority to review NFA's decision on the CFTC's own motion.[3]

But more importantly for present purposes, the statute includes a second option for obtaining CFTC review: that "any ***person*** aggrieved by the action" may appeal, indicating that appeals are not restricted only to those by the parties to the underlying NFA action. *See* 7 U.S.C. § 21(h)(2) (emphasis added). The CFTC regulation governing notice of appeal provides that "[a]ny *party* aggrieved by the final decision of the National Futures Association in a disciplinary . . . action may . . . file a notice of appeal," thus perhaps suggesting that a non-party cannot

---

[3] The regulations governing the CFTC's review of actions in the absence of an appeal provide that the CFTC may review an NFA decision on its own motion in the following manner: "At any time prior to the effective date of a final decision of the National Futures Association in a disciplinary, membership denial or registration action, the Commission may take review of a decision by issuing an appropriate order." 17 C.F.R. § 171.31(d). If the CFTC "determines that it is appropriate to take review on its own motion, it shall by order establish the procedure for submission of both the record of the proceeding and the briefs of the parties." *Id.* Accordingly, it does not appear that the regulations prohibit anyone from moving under 17 C.F.R. § 171.10(a) to ask the CFTC to review an NFA's action on the CFTC's own motion.

appeal.[4] 17 C.F.R. § 171.23(a) (emphasis added). But CFTC regulations also define the term "party" as including "any person granted permission to participate as a party pursuant" to the CFTC's intervention rules, *see* 17 C.F.R. § 171.2(i), and detail how a person may intervene in a proceeding:

> (a) Upon motion of ***any interested person*** or, on its own motion, the Commission may permit, or solicit, limited participation in the proceeding by such interested person. A motion for leave to participate in the proceeding shall be filed promptly, shall identify the interest of that person and shall show why participation in the proceeding by that person would serve the public interest. If the Commission determines that participation would serve the public interest, it shall by order establish a supplementary briefing schedule for the interested person and the parties to the proceeding.
>
> (b) For purposes of this subsection, ***interested person shall include*** parties and ***any other persons who might be adversely affected or aggrieved by the outcome of a proceeding***; their officers, agents, employees, associates, affiliates, attorneys, accountants or other representatives; and ***any other person having a direct or indirect pecuniary or other interest in the outcome of a proceeding***.

17 C.F.R. § 171.27 (emphasis added).

Furthermore, the CFTC's decision in *Paribas Futures, Inc. v. New York Mercantile Exchange*, No. 90-E-3, 1990 WL 282868 (C.F.T.C. Mar. 22, 1990), suggests that an aggrieved person may intervene in an appeal even if such person was not a party to the underlying disciplinary action to begin with. In particular, *Paribas* dealt with a late-delivery penalty imposed by the New York Mercantile Exchange's Petroleum Delivery Panel against a clearing member. *Id.* *1. The clearing member appealed the Panel's decision to the Adjudication Committee, but the liability finding was affirmed (although the fine was reduced). *Id.* The clearing member paid the fine and did not pursue an appeal with the CFTC. *Id.* The clearing member's futures customer had

---

[4] Plaintiffs also argue that the term "person aggrieved by the action" in § 21(h)(2) cannot encompass a non-party to the underlying NFA action because the statute of limitations in that subsection does not commence until written notice is provided, and notice is provided only to participants in the underlying action. But the precise scope of the term need not be determined here because, as described below, even if the term does not encompass non-parties, the intervention mechanism allows a non-party to become a party.

6

to reimburse the clearing member for the fine due to the contractual obligation between them. *Id.* at *2. That customer, who was not a party to the underling action resulting in the fine, appealed to the CFTC. *Id.* at *1. The CFTC treated the customer's request as a motion to intervene. *Id.* at *1 & n. 3.[5] The CFTC found that "[i]ntervention after an initial decision for the purposes of taking an appeal is appropriate in some circumstances." *Id.* at *2. However, the party moving to intervene must have a protectable interest—that is, there must be a "direct, significant, legally protectable interest in the property or transaction that is the subject of the action," the interest requirement is not satisfied where a holding will not "directly alter contractual or other legally protectable rights of the proposed intervenors." *Id.* Thus, for the futures customer in *Paribas*, even though the underlying adverse decision ultimately resulted in a substantial financial expense, the intervention was improper because such expense was not compelled by the decision but rather arose out of separate contractual relations between the customer and the clearing member. *Id.* While the futures customer was unsuccessful in its attempt to intervene on appeal, *Paribas* suggests that, in general, someone who is not a party to the underlying disciplinary action may appeal to the CFTC. *Id.*

A third option that one might pursue to obtain a review by the CFTC is to ask the CFTC to waive its rules. The regulation dealing with waiver of rules provides that "[t]o prevent undue hardship on any party or ***for other good cause shown***, the Commission may waive any rule in this part in a particular case and may order proceedings in accordance with its direction." 17 C.F.R. § 171.14 (emphasis added). The regulation further provides that such an order must be based "upon a determination that no party will be prejudiced thereby and that the ends of justice will be

---

[5] In particular, the CFTC treated the request as a motion to intervene under 17 C.F.R. § 9.5(a), which provides that "[a]n application for a form of relief not otherwise specifically provided for in this part must be made by a written motion." *Paribas Futures, Inc.*, 1990 WL 282868, at *1 & n.3.

7

served." *Id.* In short, under this regulation, the CFTC may waive its rules in extraordinary circumstances. *See id*.

The CFTC's decision in *In re Petition of Lake Shore Alternative Financial Asset Ltd.*, No. CRAA-07-03, 2007 WL 2751884 (C.F.T.C. Sept. 17, 2007), demonstrates how the waiver operates. In that case, the NFA issued a notice regarding a member responsibility action against Sentinel Management Group, Inc. ("Sentinel"), barring Sentinel from disposing of any assets held on behalf of certain accounts, including making disbursements to its existing customers, without prior approval. *Id.* at *1. Sentinel did not petition to stay the action. *Id.* However, another entity, Lake Shore Alternative Financial Asset Ltd. ("Lake Shore"), that was not subject to the member responsibility action by the NFA petitioned the CFTC for such a stay. *Id.* Lake Shore argued that the NFA's action amounted to an improper freezing of assets, as it effectively prevented Lake Shore from accessing its own assets. *Id.* Under the pertinent CFTC regulation only a "***party*** aggrieved by the [NFA's] determination that the [member responsibility action] should be effective prior to the opportunity for a hearing" could petition to stay such an action. *Id.* at *2 (quoting 17 C.F.R. § 171.41(a)) (emphasis added). Because Lake Shore was not the subject of the NFA's action, the only avenue available for it to become a "party" was to intervene in the proceeding. *Id.* For reasons not germane to the present discussion, however, Lake Shore could not intervene in the action under § 171.27. *Id.* Yet the CFTC's analysis of Lake Shore's petition did not stop there—the CFTC proceeded to analyze whether Lake Shore's petition would warrant a waiver under § 171.14. *Id*. The CFTC held that a person requesting a waiver has a heavy burden. *Id.* Lake Shore failed to meet that burden because the lack of access to assets was contemplated by the member responsibility actions scheme and thus was not an undue hardship; allowing a stay at the request of Lake Shore was adverse to the NFA's and the public's interests as it created a

8

possibility that the NFA action would be stayed indefinitely; and Lake Shore had not shown any other good cause to waive the rules. *Id.* at *2–3. Therefore, while Lake Shore was ultimately unsuccessful, the case demonstrates the availability of § 171.14 as an alternative option to seek CFTC review, even in the situations where intervention under § 171.27 is not available.

The CFTC not only reviews the NFA's actions in particular cases, it also oversees the NFA's rules.[6] For example, 7 U.S.C. § 21(a) states that to become a registered futures association, an association must file with the CFTC "for review and approval" a registration statement, which sets forth, among other things, the rules of the association. Furthermore, the provision governing standards for registration provides that "[a]n applicant association shall not be registered as a futures association unless the Commission finds, under standards established by the Commission," that "the rules of the association provide *a fair and orderly procedure* with respect to the disciplining of members and persons associated with members and the denial of membership to any person seeking membership therein or the barring of any person from being associated with a member." 7 U.S.C. § 21 (b)(9) (emphasis added). One of the ways the CFTC can enforce the fairness of the NFA's rules and procedures is provided in 7 U.S.C. § 21(i)(1), which states that in reviewing "a final disciplinary action taken by a registered futures association against a member thereof or a person associated with a member," the CFTC evaluates, among other things, whether the association rules "are, and were applied in a manner, consistent with the purposes" of the Commodity Exchange Act. *See* 7 U.S.C. § 21(i)(1)(A)(iii). If the CFTC does not make such a finding, the CFTC may set aside the sanction imposed by the association and, if appropriate, remand the case to the association for further proceedings. 7 U.S.C. § 21(i)(1)(B).

---

[6] In their response to the motion to dismiss, Plaintiffs state that they are not arguing that the NFA's rules are inadequate and should be changed. (*See* Pls.' Am. Resp. in Opp'n to Defs.' Mot. to Dismiss at 21 n.28, Dkt. No. 72.) However, in their complaint, Plaintiffs allege that "[i]n violation of the due process clause, NFA has failed to adopt notice and hearing provisions or procedures to intervene, and has failed to provide a post-deprivation remedy for non-members such as Effex and Dittami." (Am. Compl. ¶ 110, Dkt. No. 45.)

Furthermore, 7 U.S.C. § 21(j) obligates every registered futures association to file with the CFTC copies of any changes in or additions to the rules of the association—the CFTC might disapprove such rules if they are inconsistent with the requirements governing registered futures associations. *Id.* The CFTC also has authority to abrogate any rule of the association if, "it appears to the Commission that such abrogation is necessary or appropriate to assure fair dealing by the members of such association, to assure a fair representation of its members in the administration of its affairs or effectuate the purposes of this section." 7 U.S.C. § 21(k)(1). The CFTC can also request that any registered futures association adopt any specified alteration or supplement to its rules; if the association fails to adopt such alteration or supplement within a reasonable time, the Commission is authorized to alter or supplement the rules by order. 7 U.S.C. § 21(k)(2). And under the Administrative Procedure Act, an agency has to "give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).

Therefore, the statutes and the CFTC's regulations set out several potential avenues for Plaintiffs to pursue CFTC review of the NFA's action (and rules) here.[7] But Plaintiffs have not pursued any of those options. Instead, they offer the following reasons why their action should proceed in this Court.

First, Plaintiffs argue that there is no requirement for them to exhaust administrative remedies in the present case because they are not challenging the actual disciplinary action taken by the NFA—instead, they are challenging the NFA's dissemination of false and misleading information, which is outside of the CFTC's jurisdiction. For this argument, Plaintiffs rely on an unpublished decision from the Second Circuit, *Santos-Buch v. Financial Industry Regulatory*

---

[7] CFTC determinations regarding NFA actions are reviewable by a federal appellate court. *See* 7 U.S.C. § 21(i)(4) ("Any person aggrieved by a final order of the Commission entered under this subsection may file a petition for review with a United States court of appeals in the same manner as provided in section 9 of this title.").

*Authority, Inc.*, 591 F. App'x 32 (2d Cir. 2015), which they view as holding that a party must challenge a disciplinary action to be eligible for review under the substantively identical provision of the Securities Exchange Act of 1934.

In *Santos-Buch*, the plaintiff resolved through a settlement the disciplinary proceedings against him initiated by a subsidiary of the National Association of Securities Dealers, Inc. ("NASD"), a self-regulatory organization under the Securities Exchange Act. *Id.* at 32. The settlement agreement contemplated a public notice of the disciplinary action, which was allegedly limited by then-existing rules that provided for only a one-time publication of the disciplinary action. *Id.* Sometime later, the Financial Industry Regulatory Authority Inc. ("FINRA") succeeded the NASD and assumed its self-regulatory functions; the Securities and Exchange Commission ("SEC") was charged with reviewing FINRA's actions and rules. *Id.* at 32–33. FINRA published the plaintiff's disciplinary records in several internet databases, one of which was maintained without authorization by any rule. *Id.* at 33. The plaintiff brought an action arguing that such publication was done without authorization and in violation of the Due Process Clause of the Fifth Amendment. The Second Circuit held that the plaintiff's claims for injunctive and declaratory relief were not subject to the Securities Exchange Act's exhaustion requirement because they challenged neither the disciplinary action taken by FINRA nor a FINRA rule, although the claims still had to be dismissed because FINRA was not a state actor and so the plaintiff had failed to allege a claim for violation of his due process rights. *Id.* at 34.

Notably, *Santos-Buch* is an unpublished opinion from a different circuit—thus, it is not controlling authority for this Court. Moreover, the plaintiff in *Santos-Buch* simply challenged the act of publication of the disciplinary action itself, not the contents of the disciplinary action or anything else related to the substance of the action. Hence, in the Second Circuit's view, the

11

plaintiff's challenge plainly fell outside of the SEC's authority to review FINRA's actions. *See, e.g.,* 15 U.S.C. § 78s(d)(2) (authorizing review of self-regulatory organizations' actions that require notice under § 78s(d)(1), including final disciplinary actions). But here, Plaintiffs' claims also touch on the contents of the NFA Publications—documents generated as a result of the NFA investigation relating to a disciplinary action. Moreover, in their complaint, Plaintiffs allege that "[i]n violation of the due process clause, ***NFA has failed to adopt notice and hearing provisions or procedures to intervene***, and has failed to provide a post-deprivation remedy for non-members such as Effex and Dittami." (Am. Compl. ¶ 110 (emphasis added), Dkt. No. 45.) Thus, despite their protestations, it appears that Plaintiffs are in fact contesting both the underlying decision of a self-regulatory organization and its rules.

Second, Plaintiffs argue that they cannot pursue an appeal pursuant to 7 U.S.C. § 21(h)(2) because they are not "aggrieved persons" within the meaning of the statute, as "aggrieved persons" do not include non-parties and Plaintiffs cannot become parties by intervening on appeal without showing a public purpose.[8] Plaintiffs do not explain why their intervention would not serve a public purpose, however. (*See* Pls.' Am. Resp. in Opp'n to Defs.' Mot. to Dismiss at 20, Dkt. No. 72.) This argument is particularly surprising, considering that in their briefing for the motion for a preliminary injunction, Plaintiffs raise a variety of public purpose arguments. (*See* Pls.' Mem. of Law in Further Supp. of Its Application for Prelim. Inj. at 19, Dkt. No. 68.) Moreover, this argument does not account for the possibility of Plaintiffs seeking a waiver of CFTC rules under 17 C.F.R. § 171.14.

Third, Plaintiffs contend that any appeal would be futile. In particular, Plaintiffs claim that due process claims are beyond the scope of administrative review and therefore the administrative

---

[8] Plaintiffs appear to be referring to 17 C.F.R. § 171.27(a), which states that a motion to intervene has to show why participation in the proceeding "would serve the public interest."

exhaustion requirement does not apply. Although due process claims do not usually require exhaustion because administrative agencies typically cannot adjudicate constitutional issues, the exhaustion requirement nonetheless applies when the claim involves procedural errors correctable by the administrative tribunal. *See Mojsilovic v. I.N.S.*, 156 F.3d 743, 748 (7th Cir. 1998). Moreover, a plaintiff "with a statutory argument that has a reasonable prospect of affording him relief may not skip the administrative process and go straight to federal court by simply reconstituting his claim as constitutional and claiming futility." *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1018 (7th Cir. 2004).

Here, the statute governing registered futures associations requires that "the rules of the association provide a fair and orderly procedure with respect to the disciplining of members." 7 U.S.C. § 21(b)(9). Plaintiffs allege that they "were denied due process because they did not receive an opportunity to be heard at a post-deprivation name clearing hearing or any other type of hearing or appeal following the injury to the protected liberty and property interests" and ask for injunctive relief to remove the NFA Publications from the NFA's website or, in the alternative, to provide a name clearing hearing, or delete all references to Plaintiffs from the NFA Publications, and issue a new release clearing Plaintiffs' names.[9] (Am. Compl. ¶¶ 114, 117, Dkt. No. 45.) Yet Plaintiffs fail to explain why they should forgo the step of raising their claims based upon purportedly unfair NFA procedures to the CFTC. *See, e.g.*, *Presidential Futures, Inc. v. NFA*, No. CRAA-89-2, 1992 WL 15694, at *4, *9 (C.F.T.C. Jan. 23, 1992) (finding that the NFA failed to observe fundamental fairness by not providing the petitioning member with sufficient notice and a meaningful hearing). And Plaintiffs also fail to explain why the NFA's allegedly false findings as reflected in the NFA Publications, which were made in the course of an NFA

---

[9] Plaintiffs also ask for monetary damages to redress the due process violation. (Am. Compl. ¶¶ 118–25, Dkt. No. 45.)

13

disciplinary adjudication, could not be corrected via CFTC review before proceeding with the due process claims in a federal court.

Plaintiffs instead contend that such an appeal would be futile because the CFTC does not review NFA's settlements. But this does not seem to be the case—while there might not be many instances where settled actions reach the CFTC for review, the CFTC does not appear to have a categorical rule barring such review and indeed has reviewed such actions. *See, e.g.*, *Grandview Holding Corp., et al. v. Nat'l Futures Ass'n,* No. CRAA-96-1, 1997 WL 119994 (C.F.T.C. 1997) (hearing an appeal on the issue of whether a settlement offer can be withdrawn). Plaintiffs cite no statutory provision or regulation for their position to the contrary but instead rely on *American Financial Trading Corp. v. National Futures Organization*, No. CRAA 06-01 (C.F.T.C. 2006). And it is unclear why Plaintiffs believe that the *American Financial* decision stands for the proposition that the CFTC does not review settlements. In that case, the CFTC simply held that a decision by the NFA to place an entity that had settled a disciplinary action on a list of disciplined firms was a ministerial action and not a "disciplinary action" or other event that the CFTC has jurisdiction to review, and that such action did not warrant a waiver of CFTC rules under 17 C.F.R. § 171.14. *Id.*

Plaintiffs next argue that an appeal to the CFTC would be futile because "it is incomprehensible that [the] NFA, after failing to allow Plaintiffs to participate in the actual investigation . . . , would permit Plaintiffs to intervene post-settlement." (*See* Pls.' Am. Resp. in Opp'n to Defs.' Mot. to Dismiss at 22, Dkt. No. 72.) Plaintiffs fail to explain, however, why the NFA would have to permit them to intervene, as the CFTC is the decision-maker regarding intervention for purposes of an appeal. *See, e.g.*, 17 C.F.R. § 171.27(a).

Plaintiffs' final futility argument rests on the assertion that it would be impossible for them to adjudicate any appeal because they were not privy to any of the underlying documents or testimony and therefore do not possess the records necessary to file, much less to pursue, an appeal or review. But Plaintiffs' complaint mainly stems from the NFA Publications, which Plaintiffs already have. And Plaintiffs do not explain why the lack of other documents or testimony from the NFA's disciplinary proceedings would prevent them from asking for CFTC review. Furthermore, CFTC regulations governing appeals provide that "[w]ithin thirty days after service of a notice of appeal, the National Futures Association shall file with the Proceedings Clerk two copies of the record of the proceeding" and "shall serve on the party appealing, in lieu of the record, a copy of the index of the record and a copy of any document in the record not previously served on the party appealing." 17 C.F.R. § 171.24. The regulations also provide that "[i]f the party appealing objects to the materials included or excluded in preparing the record, he shall file his objections with his brief on appeal" and the CFTC then "may, at any time, direct that an omission or misstatement be corrected and, if necessary, that a supplemental record be prepared and filed." *Id.* Hence, the Court does not find this argument persuasive either.

## CONCLUSION

In sum, the Court concludes that Plaintiffs should have exhausted their administrative remedies prior to filing this lawsuit. Having not done so, their case must be dismissed.[10] The dismissal is without prejudice to Plaintiffs pursuing their administrative remedies and then seeking review of their properly exhausted claims in the appropriate federal court. Accordingly,

---

[10] As indicated earlier, the exhaustion requirement here is likely jurisdictional and thus the Court does not have jurisdiction to rule on Plaintiffs' motion for preliminary injunction. But even if the exhaustion requirement were not jurisdictional, the existence of a meritorious defense would of course prevent Plaintiffs from demonstrating some likelihood of success on the merits, as required for preliminary injunctive relief. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

15

Defendants' motion to dismiss Plaintiffs' amended complaint (Dkt. No. 58) is granted and Plaintiff's motion for a preliminary injunction (Dkt. No. 7) is denied as moot.

ENTERED:

Dated: April 5, 2018

_____
Andrea R. Wood
United States District Judge